**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case 23-08362 |
| JAVEED A. SYED, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| In re: | ) | Bankruptcy Case 23-08391 |
| | ) | |
| ABDUL H. KAHN and | ) | |
| | ) | Chapter 13 |
| SHUMAILA KAHN, | ) | |
| | ) | |
| Debtors. | ) | Judge Lynch |
| | ) | |

**MEMORANDUM DECISION**

Before the court are two chapter 13 bankruptcy cases involving similar circumstances. Javeed A. Syed filed an individual petition on June 26, 2023, claiming to own and reside in Unit 1E of a condominium at 1044 Swift Rd., Glen Ellyn, Illinois. The following day Abdul and Shumaila Khan filed their joint petition, claiming to own and reside in Unit 1D of the same building. The same attorney represents the Debtors in the two cases. In both cases, the condominium association for the building, RSS Homes Condominium Association (the "Association") objects to confirmation of the plans proposed by Syed and the Kahns and seeks to modify the automatic stay as to the Glen Ellyn properties.

The Debtors having defaulted on their condominium assessments, the Association obtained judgments of eviction (the "Eviction Orders") in May 2023. But as of the petition dates, the Association had not secured possession of either unit. In their respective chapter 13 plans, the Debtors propose to repay the outstanding assessments and other amounts owing the Association in equal monthly payments over the term of their plan while remaining in possession of their units.[1] The Association opposes confirmation in both cases by arguing that the entry of the Eviction Orders "terminated the Debtor's right to possession after that date unless and until the Debtor pays the judgment, with fees, costs, and interest, in full." (Obj. to Conf. ¶ 4.)[2] Contending that the Bankruptcy Code does not extend the time for Debtors to regain their "right to possession" beyond the 60 days provided under section 108(b)(2), the Association argues that the court may not confirm a plan that proposes to repay its judgment for outstanding assessments over the course of years "during which the Movant is denied the right to possession." (Reply at 3 (Syed, ECF No. 39; Kahn, ECF No. 33).) Therefore, it argues, the proposed plans impermissibly modify the Association's possessory rights and may not be confirmed under section 1322(b)(2). (*Id.* at 5.) For these reasons, too, the Association claims it lacks adequate protection of its rights in the property and requests modification of the automatic stay. (Mot. to Modify Stay (Syed, ECF No. 18; Kahn, ECF No. 17).)

---

[1] The amount of claim listed in each plan matches the amount the Association asserts in its proof of claim. While each plan provides for the claim to be paid without interest, the Association has not raised any objection to the proposed amount to be paid under the plans and only argues that the Debtors have no right to maintain possession unless and until the Eviction Orders are vacated pursuant to Illinois law.

[2] Case No. 23bk08362 ("Syed") ECF No. 27; Case No. 23bk08391 ("Kahn"), ECF No. 23.

2

The material facts are essentially uncontested, and the Court has already ruled from the bench on the issues before it based on the argument of counsel and the record presented. The Court finds for the reasons further described in this Memorandum Decision that the Association's objections to confirmation are not supported by applicable law. Accordingly, they are overruled. As the motions for stay relief are based on the same premises and the Association has not shown that the Debtors' respective condominium units are unnecessary for effective reorganization, those motions were denied as well.

## I.  JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the Northern District of Illinois. Matters involving confirmation of a debtor's chapter 13 plan and motions to terminate, annul, or modify the automatic stay may only arise in a bankruptcy case, concern the administration of the bankruptcy estate and are within the Court's core jurisdiction. 28 U.S.C. § 157(b)(2)(A), (L). *See In re Williams*, 583 B.R. 453, 455 (Bankr. N.D. Ill. 2018) ("Matters relating to confirmation of a plan are core proceedings under 28 U.S.C. § 157(b)(2)(L)."); *In re D/C Distribution, L.L.C.*, 617 B.R. 600, 605 (Bankr. N.D. Ill. 2020) (providing that stay relief motions are "'core' proceedings . . . in which the bankruptcy court has both statutory and constitutional authority to enter final orders").

## II.  BACKGROUND

After a contested hearing or trial, on May 4, 2023, the DuPage County Circuit Court entered an order of eviction in favor of the Association and against Mr. Syed and Shabana Ali. (Case No. 2023 EV 000707.)  The form order states the "Plaintiff is given possession of the property" and "Defendants must move out of the property on or before 7/6/23."  The sheriff is ordered to evict the defendants if they do not move by that date.  The order further states that the Association "is owed . . . $20,036.61[,] . . . the total judgment entered" against the Defendants, said amount representing condominium assessments and court costs.

Mr. Syed filed his bankruptcy petition on June 26, 2023, before the eviction order was executed.  His schedules filed with his chapter 13 petition list a secured claim of the Association in the amount of $20,036.61 and estimate (in Schedule J) his ongoing monthly household expense for the condominium assessments to be $250. On August 31, 2023, the Association filed a secured claim for $21,179.14, asserting a statutory lien in the Debtor's residence. (Syed, Claim 5-1.)  The Debtor does not dispute Claim 5-1 and his proposed chapter 13 plan, as amended, proposes to pay in full through the plan the Association's judgment claim over the course of its 36-month term. (Syed, ECF No. 46.)

During this time, Mr. and Mrs. Kahn also were in default for their condominium unit's assessment.  On May 4, the DuPage County Court entered an order of eviction against the Kahns and in favor of the Association and after a contested hearing. (Case No. 2023 EV 000704.)  That order contains the provisions

4

for possession, eviction, monetary judgment and other items found in the Syed eviction order and awards a total judgment of $6,831.61 against the defendants. As is the case with Mr. Syed, the Kahns were in physical possession of their unit when they filed their chapter 13 petition on June 27, 2023, and they continue to reside in the unit.

The Kahns also list the full amount of the Association's judgment and provide for the ongoing monthly assessment among the estimated household expenses. The Association filed a secured claim in the case on August 31 for $7,673.20, again asserting a statutory lien in the Debtors' unit. (Kahn, Claim 11.) The Debtors do not dispute Claim 11. The chapter 13 plan they offer, as amended, proposes to pay in full through the plan the Association's judgment claim over 56 months. (Kahn, ECF No. 29.)

The Association objects to confirmation in both cases, raising the same argument in each. It contends that under applicable state law, the Eviction Orders terminated the Debtors' right to possession upon expiration of the 60-day stay provided under 735 ILCS 5/9-111, *et seq.*, until its judgment and related amounts are paid in full and a court vacates the Eviction Orders. It invokes sections 1322(c)(1) and 362(b)(22) of the Bankruptcy Code to argue for the finality of the prepetition Eviction Orders, analogizing the enforcement of the Eviction Orders to foreclosure proceedings to contend that the Code "does not allow the Debtors to keep possession while attempting to satisfy the judgment." (Obj. to Conf. at 3.) Based on this, the Association contends that plan confirmation should be denied under section

5

1322(b)(2) on the grounds the Debtors impermissibly propose to modify the Association's rights in the property by not providing for surrender of possession, and instead proposing to pay the judgment claim over time. (*Id.* at 5.)

The Association relies on this line of argument in its concurrent motions for stay relief. (Syed, ECF No. 18; Kahn, ECF No. 17.)  These motions reiterate the proposition that with the entry of the Eviction Orders, the Debtors "lost any right they had to possess the Property, and the said possessory right is not property of the estate." (*Id.* ¶ 4.)  However, the Association then appears to concede that the automatic stay does apply to the properties, contending that "[b]y the stay of the [eviction] proceeding, and inability to protect its interest, the movants interest in the Property is not adequately protected." (*Id.* ¶ 7.)

The Debtors oppose the Association's arguments, relying in part upon *In re Morrow*, 495 B.R. 378 (Bankr. N.D. Ill. 2013), to assert that the mere existence of the unexecuted Eviction Orders does not extinguish the owner's possessory interest in the condominium property.  If the owner is in actual possession of the property when she files her bankruptcy petition, they argue, the debtor's possessory interest becomes property of the estate and subject to the automatic stay.  In further support of their position, the Debtors raise that their plans propose to pay in full the Association's claim and note that the Association does not object to their proposed repayment treatment except to contend that the Debtors may not repay the arrears through the plan at all.  They further assert that their respective plans adequately  apply the Debtors' disposable income within the sixty-month period allowed and satisfy the

6

chapter 7 liquidation analysis, correctly treat all secured claims and were filed in good faith, to argue that the Court should overrule the Association's objection to confirmation.  The Association has not addressed these last points.

## III.  DISCUSSION

A.  <u>The Prepetition Eviction Order for Unpaid Condominium Assessments Does Not Divest the Unit Owner of an Ownership Interest.</u>

"A condominium is an interest in real estate created by statute that gives each owner an interest in an individual unit as well as an undivided interest in common elements.  Administration and operation of the condominium are vested in the condominium association, which is comprised of all unit owners." *Goldberg v. 401 N. Wabash Venture LLC,* 904 F. Supp. 2d 820, 824  (N.D. Ill. 2012) (quoting *Bd. of Dirs. of 175 E. Del. Pl. Homeowners Ass'n v. Hinojosa,* 287 Ill. App. 3d 886, 889 (1997)). Since 1972, Illinois has provided a statutory procedure whereby a condominium association may seek eviction of a unit owner who fails "to pay when due his or her proportionate share of the common expenses of the property, or of any other expenses lawfully agreed upon or the amount of any unpaid fine." 735 ILCS 5/9-111.[3]  A court can "enter an eviction order in favor of the plaintiff and judgment for the amount found due by the court including interest and late charges, if any, together with reasonable attorney's fees, if any, and for the plaintiff's costs." *Id.*

---

[3] *See, e.g.*, *Knolls Condo. Ass'n v. Harms*, 202 Ill. 2d 450, 457-58 (2002) (discussing the legislative history of the statutory provisions providing this right).  Illinois seems to be unique in this respect. *See, e.g., Spanish Court Two Condo. Ass'n v. Carlson,* 2014 IL 115342, ¶ 40 (Freeman, J. dissenting) ("We are unaware of any other state that permits an association such a remedy in forcible entry and detainer." (citing 1 Gary A. Poliakoff, The Law of Condominium Operations § 5:48 (1988 and Supp. 2012-13))).

"[U]nlike an order of possession in favor of a landlord," however, "an order of possession in favor of an association is intended to be temporary, not permanent, 'with possession eventually returning to the unit owner.'" *Spanish Court Two Condo. Ass'n v. Carlson*, 2014 IL 115342, ¶ 23 (quoting *Knolls Condo. Ass'n v. Harms*, 202 Ill. 2d 450, 457 (2002)). While both a landlord and a condominium association may use eviction procedures to enforce a breach of a payment obligation, "the landlord-tenant relationship and the association-unit owner relationship are not analogous." *Id.* ¶ 24. Notably, the "relationship between a landlord and tenant is purely contractual and terminates upon a breach of that contract. By contrast, the relationship between the condominium unit owner and the board of managers is statutory and ongoing." *Id.* ¶ 23 (quoting Ill. Ann. Stat., ch. 30, ¶ 309.2, Historical and Practice Notes, at 198 (Smith-Hurd Supp. 1992)). As the Illinois Supreme Court has emphasized, a "unit owner does not cease to be a unit owner even if dispossessed of his or her unit, and the obligations of condominium ownership, including the obligation to pay assessments, continue unabated." *Id.* ¶ 23.

Illinois includes several notable features in its statutory procedure for condominium evictions. First, the procedure results in not only an eviction order but a money judgment for the amounts owing to the condominium association. This judgment may be enforced through other judicial and statutory methods to enforce a judgment. 735 ILCS 5/9-111(a) ("Nothing herein contained shall be construed as affecting the right of the board of managers, or its agents, to any lawful remedy or relief other than that provided by Part 1 of this Article."). Second, the unit owner has

8

the right to seek to vacate the eviction order after payment of all sums due, which may incentivize the unit owner to do so.  Indeed, the statute provides a grace period for this, requiring the court to by order "stay the enforcement of the eviction order for a period of not less than 60 days from the date of the judgment and may stay the enforcement of the order for a period not to exceed 180 days from such date." *Id.*  And the statute does not impose a deadline terminating the unit owner's ability to cure. "If at any time, either during or after the period of stay, the defendant pays such expenses found due by the court, and costs, and reasonable attorney's fees as fixed by the court, and the defendant is not in arrears on his or her share of the common expenses for the period subsequent to that covered by the order, the defendant may file a motion to vacate the order in the court in which the order was entered." *Id.*

Third, with certain limitations, the condo association may lease the unit and apply the proceeds of such lease to the amounts owing.[4]  The association may only do so to a "bona fide tenant" and pursuant to a "written lease for a term which may commence at any time within 8 months after the month in which the date of the expiration of the stay of the order occurs." 735 ILCS 5/9-111.1.  The term may not exceed 13 months from the commencement of the lease.  Such a lease may be extended for additional terms not to exceed 13 months per term, but only with the permission of the court on motion with notice to the evicted unit owner.

---

[4] Under another section of the statute, if the unit owner had leased the unit to a third party, "any interest of the unit owner to receive rents under any lease arrangement shall be deemed assigned to the Board of Managers until such time as the judgment is vacated." 735 ILCS 5/9-104.2.  That constitutes another method of collecting on the judgment.  Alternatively, the association can seek to evict the tenant. *Id.*

9

Notably, proceeds from such lease arrangements must be applied first to the monetary judgment from the eviction proceeding (plus statutory interest, attorneys' fees and court costs), and next to fines, reasonable expenses and expenses necessary to make the unit rentable and subsequent assessments until current.  Any surplus remaining will be remitted to the unit owner. *Id.*  While paying all amounts owed gives the unit owner the right to seek to vacate the eviction order, if the unit is currently let by the association under section 9-111.1, the statute requires that a granted vacatur order must take effect after the expiration of the condominium association's lease. 735 ILCS 5/9-111(a).

It is evident that under Illinois condominium law the eviction of a unit owner for nonpayment of assessments temporarily affects her possession but does not divest the unit owner of her ownership interest.  The statute is also clear that entry of the eviction order by itself does not immediately or permanently divest the unit owner of the right to possession.  Rather, section 5/9-111(a) provides that "[u]nless defendant files such motion to vacate in the court or the order is otherwise stayed, enforcement of the order may proceed immediately *upon the expiration of the period of stay* and all rights of the defendant to possession of his or her unit shall cease and determine *until the date that the order may thereafter be vacated* in accordance with the foregoing provisions." *Id.* (emphasis added).

B. <u>An Unexecuted Prepetition Eviction Order Does Not Preclude the Treatment of a Judgment for Condominium Assessments in a Chapter 13 Plan or Furnish Grounds for Stay Relief.</u>

The Association raises several points drawn from the Code and bankruptcy caselaw to argue that the unexecuted Eviction Orders terminated the possessory rights of the Debtor unit owners and their ability to cure by repaying the unpaid condominium assessments through a chapter 13 plan.   First, invoking section 1322(c)(1) of the Bankruptcy Code, the Association argues the proposed treatment of the condominium assessment judgment through the plans is "impermissible," asking the Court to liken entry (without execution) of condominium orders of possession to a foreclosure sale of mortgaged real property.   That Code section addresses the ability of a plan to modify the rights of holders of secured claims under section 1322(b)(2) or to cure defaults pursuant to subsections (b)(3) and (5), by stating that:

> a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.

11 U.S.C. § 1322(c)(1).

But as discussed above, an eviction order under 735 ILCS 5/9-111(a) is not a "foreclosure sale," and the eviction of a unit owner under section 9-111(a) does not result in a transfer or termination of the unit's ownership.   The Illinois Supreme Court resolved any confusion about this when it ruled in *Spanish Court* that "[a] unit owner does not cease to be a unit owner even if dispossessed of his or her unit, and the obligations of condominium ownership, including the obligation to pay assessments, continue unabated." 2014 IL 115342, ¶ 23. *See also Knolls Condo.*, 202

11

Ill. 2d at 460-61 ("Section 9-111.1 of the Code makes it clear that when a judgement for possession is entered on behalf of the condominium association against the unit owner, the unit owner maintains title to the unit and the condominium association has the right of possession only until the assessments and related amounts that are owed are paid."); *In re Terrell*, 614 B.R. 300 (Bankr. N.D. Ill. 2020) (finding condo association's pursuit of eviction rather than foreclosure to be a discharge violation, explaining that "the prepetition *in personam* claim was discharged and while the *in rem* lien remained, it could only be pursued through a foreclosure action" (citing *339 W. Barry Condo. Ass'n v. Bunin*, 401 Ill. App. 3d 1144 (2010)).

The unit owner's right to cure recognized by the Illinois statute additionally distinguishes the condominium eviction process from a foreclosure sale. As explained by the Seventh Circuit in a decision cited by the Association, *Colon v. Option One Mortgage Corp.*, Bankruptcy Code section 1322(c)(1)'s "wording and its legislative history both indicate an intent to set the limit on the right to cure no earlier than the date of the judicial sale," but "requires deference to state mortgage law on the scope of any right to cure after the sale." 319 F.3d 912, 920 (7th Cir. 2003). Because Illinois foreclosure law does not provide the chapter 13 debtor with a right of redemption after a foreclosure sale, *Colon* held section 1322(c)(1) does not "create[] a more expansive right to cure than that which the Illinois Code provides." *Id.* at 920-21. However, as discussed above, unlike a mortgagee facing the foreclosure sale of its property, Illinois law does not restrict the time for the unit owner to regain the right to possession by paying the amount owed and seeking vacatur of the eviction order.

12

Instead, section 5/9-911 recognizes the condominium owner's right to do so "at any time, either during or after the period of stay." 735 ILCS 5/9-111(a).[5]

The Association also references section 362(b)(22) of the Bankruptcy Code in support of its argument. That section excepts from the automatic stay "the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor." 11 U.S.C. § 362(b)(22). While referring to eviction and unlawful detainer actions, that section expressly applies only to a "proceeding by a lessor" for property "in which the debtor resides as a tenant under a lease or rental agreement." But the relationship between a condominium association and a unit owner is not that of a landlord to a tenant: Illinois law determines the former relationship by statute, and not by a lease or rental agreement as it does the latter. *Spanish Court*, 2014 IL 115342, ¶¶ 23-24.

The origins of the referenced exception in section 362 underscore this difference. The 2005 amendments to the Bankruptcy Code added section 362(b)(22) to address a perceived "problem faced by thousands of large and small residential

---

[5] For the same reason and contrary to the Association's suggestion, the Debtors do not need to rely upon and are not limited by section 108(b) of the Bankruptcy Code. According to section 108(b), "if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of— (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief." 11 U.S.C. § 108(b)(2).

13

landlords across the nation whose tenants file for bankruptcy relief solely for the purpose of staying pending eviction proceedings so that they can live 'rent free.'" H.R. REP. 109-31(I), 17, 2005 U.S.C.C.A.N. 88, 103. *See also* Alan M. Ahart, The Inefficacy of the New Eviction Exceptions to the Automatic Stay, 80 Am. Bankr. L.J. 125, 128 (2006). Such "tactic" was seen as "particularly egregious when one considers that under many states' laws, the tenant/debtor whose lease has expired or who has been evicted retains no property interest in the tenancy or residential realty that could ever have become property of the estate." 80 Am. Bankr. L.J. at 127 (quoting 1 NAT'L BANKR. REVIEW COMM'N, FINAL REPORT, BANKRUPTCY: THE NEXT TWENTY YEARS, CHAPTER 5: INDIVIDUAL COMMISSIONER VIEWS 65-66 (1997)). By contrast, as discussed above, even after a prepetition eviction the debtor still retains a possessory interest in the condominium unit under 735 ILCS 5/9-111(a), an interest that becomes property of the estate upon the commencement of the bankruptcy case.

Nor does the Court find persuasive the Association's reference in support of its motions for stay relief to dicta found in *In re DiGregorio*, 458 B.R. 436, 439 (Bankr. N.D. Ill. 2011), to argue the Debtors are not "entitled" to provide for payment of the judgment over time through a plan. (Stay Motions, ¶ 6.) The bankruptcy court in that case denied a debtor's request for sanctions under section 362(k) where the debtor had been evicted prepetition from her unit by a condominium association. DiGregorio argued that his association violated the automatic stay when it refused to return possession of the unit after he commenced his chapter 13 case. Observing that

14

the unit holder had lost the right of possession, the *DiGregorio* court reasoned that under the *Rooker-Feldman* doctrine the bankruptcy court had no authority to sanction the association for refusing to return possession.[6]  458 B.R. at 441 (quoting *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642 (7th Cir. 2011)).

Here, none of the Debtors challenge or seek review of the judgments of the DuPage County court and they do not ask this Court to reverse or annul or vacate those judgments.  As the Seventh Circuit recently emphasized, the "mere assertion that a [lower federal] court, in considering a claim that is independent of the state court judgment, might negate a legal conclusion that the state court reached is insufficient to trigger application of *Rooker-Feldman*." *Fliss v. Generation Capital I, LLC*, No. 22-1424, 2023 U.S. App. LEXIS 31304, at *8 (7th Cir. Nov. 27, 2023) (quoting *Zurich Am. Ins. Co. v. Super. Ct. of Cal.*, 326 F.3d 816, 823-24 (7th Cir. 2003)).

Instead, this Court must look to the Bankruptcy Code to resolve the issues before it.  Section 541(a) states that the bankruptcy estate is comprised of, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the" case "*wherever located and by whomever held.*" 11 U.S.C. § 541(a) (emphasis added).  Section 542 further requires, with limited exceptions not applicable here, that any person or entity "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that

---

[6] The result in *DiGregorio* is likely consistent with the Supreme Court's decision ten years later holding that passively retaining property rightfully repossessed prepetition is not in itself an "act . . . to exercise control over property of the bankruptcy estate." *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021).  However, as discussed above, *DiGregorio* relied on different reasoning than *Fulton*.

15

the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

The parties do not dispute that the Debtors were owners of their respective condominium units and that under the Illinois statute the Eviction Orders are not a foreclosure sale. Unlike a mortgage foreclosure, Illinois does not limit the time for the unit owner to regain the right to possession by paying the amount owed and seeking vacatur of the order of eviction. Even had the Eviction Orders been executed before the bankruptcies, under the condominium statute the Debtors still have the right to regain possession "at any time, either during or after the period of stay." 735 ILCS 5/9-111. The Eviction Orders were not executed, the Debtors remain in actual possession of the units, and their statutory right to cure remains unimpaired.

It is not contested that a bankruptcy trustee (or the Debtors, to the extent they may exercise the powers of a trustee in chapter 13) has the right to sell the units and the Debtors have a right to claim a homestead exemption in the units. Notwithstanding their rights under state law, the Debtors have a right to possession of the units under federal bankruptcy law. Indeed, in *U.S. v. Whiting Pools, Inc.*, the Supreme Court rejected the Association's implicit argument that because the estate's interest is generally limited to the debtor's interest at the time of possession a debtor-in-possession did not have a right to possession of collateral repossessed by a creditor prepetition. The Court noted that several Bankruptcy Code provisions, including section 541 and 542, "bring into the estate property in which the debtor did not have

16

a possessory interest at the time the bankruptcy proceedings commenced." *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983). The Court further held that "§ 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings." *Id.* at 207. "Both the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate." *Id.* at 204.[7]

Although *Whiting Pools* involved a chapter 11 case, the Supreme Court has on numerous occasions highlighted the power to modify the rights of a secured creditor through a chapter 13 plan. For example, in discussing the power to retain collateral by paying its value through a chapter 13 plan under section 1325(a)(5)(B), the Court noted that in "allowing Chapter 13 debtors to retain and use collateral over the objection of secured creditors, however, the Bankruptcy Code has reshaped debtor and creditor rights in marked departure from state law." *Assocs. Commer. Corp. v. Rash*, 520 U.S. 953, 964 (1997). Similarly, in discussing the standard for determining whether the rate of interest on a secured claim in a chapter 13 plan is sufficient to provide the present value of collateral, the Court recognized that the Bankruptcy Code "does not require that the terms of the cram down [plan provisions] match the

---

[7] Again, in *dicta*, the court in *DiGregorio* suggests that *Whiting Pools* is distinguishable from a prepetition eviction by a condominium association "because in that case no final judgment of any court had terminated Debtor's right to possession" whereas in the case at hand the possessory interest was "not an interest that can be reclaimed under § 542 because it was terminated pre-bankruptcy by judgment." 458 B.R. at 443. This Court disagrees that the Supreme Court's ruling is distinguishable on that point, but in any event finds it was not necessary to *DiGregorio*'s ultimate holding that refusal to return possession of the unit was not a willful violation of the automatic stay under section 362(a)(3).

17

terms to which the debtor and creditor agreed prebankruptcy." *Till v. SCS Credit Corp.*, 541 U.S. 465, 476 (2004).

Nor does the Supreme Court's recent decision *City of Chicago v. Fulton* limit the scope of property rights that become part of the estate or limit the impact of section 542. While the Court did hold that passive retention of a vehicle repossessed prepetition was not an "act . . . to exercise control over property of the estate" in violation of the automatic stay, 11 U.S.C. § 362(a)(3), it did not suggest that the vehicle was not part of the estate or that the chapter 13 debtor was powerless to demand turnover. To the contrary, the Court observed that "Section 541 'is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code.'" 141 S. Ct. at 589 (quoting *Whiting Pools*, 462 U.S. at 205). Nor did the Court suggest that section 542 does not require turnover. Instead, the Court held that section 362(a)(3) is not "an enforcement arm of sorts for §542(a)" reasoning that reading the automatic stay provision as automatically requiring turnover "would render the central command of § 542 largely superfluous" and nullify the exceptions provided in section 542. *Id.* at 591-92. Since *Fulton,* courts have continued to find authority under section 542 to compel turnover of repossessed vehicles to chapter 13 debtors. *See, e.g., In re Corder*, 2021 Bankr. LEXIS 3558, at *5 (Bankr. N.D. Ill. Sep. 15, 2021) (finding that because repossessed vehicle provided means for the debtor "to earn a living, transport her children and fund a chapter 13 plan" it was not "of inconsequential value and benefit to the estate" and ordering its return to chapter 13 debtor under section 542); *Rakestraw v. AtWill Fin. (In re*

18

*Rakestraw)*, 2022 Bankr. LEXIS 2467, at *3 (Bankr. N.D. Ga. Sep. 6, 2022) (finding that under section 542(a) the entity in possession of repossessed vehicle "has the obligation to turn it over to" the chapter 13 debtor).[8]

Finally, because the stay of the Eviction Orders had not lapsed as of the petition date, the Debtors still had a right to possess the units as of the petition date and such possessory interest, too, became property of the estate under section 541. *See, e.g., In re Morrow*, 495 B.R. 378, 392 (Bankr. N.D. Ill. 2013) (where association had not obtained possession of condominium unit prepetition, "the debtor's possessory interest in the Property continued as of the commencement of the case, and that upon the filing of the bankruptcy petition the possessory interest became a part of the bankruptcy estate under section 541"). This Court agrees with the *Morrow* court's conclusion for similar circumstances that "the mere existence of an order for possession does not serve as grounds for relief from stay" and, as is the case here, a "request for postconfirmation relief on such prepetition grounds is untimely." *Id.* at 393 (finding the confirmed chapter 13 plan treating and repaying the association's secured claim to be binding).

## IV.  CONCLUSION

The unexecuted Eviction Orders do not bar the Debtor from maintaining possession of their condominium units during the respective bankruptcy cases. As explained during the Court's previous oral ruling and with the parties' consent to the later entry of this written decision, for the reasons set forth above, the state court

---

[8] Because here the Association had not taken possession of the units prepetition, there was no need for an adversary complaint under section 542 to compel turnover.

19

orders do not prohibit the Debtors from proposing the treatment of the allowed claims for condominium assessments in their plans of reorganization.   Therefore, the Association's objections to confirmation were overruled.   Further, having found that the mere existence of the unexecuted prepetition orders for possession do not provide grounds for relief from the automatic stay, this Court has ruled that the motions for stay relief must be denied.

Separate orders denying the motions for stay relief will be entered in the respective cases concurrent with this Memorandum Decision.

DATE: February 28, 2024

ENTER

_____

Thomas M. Lynch
United States Bankruptcy Judge

20